## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE JEWISH FEDERATION OF GREATER
WASHINGTON, INC.
6101 Executive Boulevard
North Bethesda, Maryland 20852,
,

       *Plaintiff,*

   v.

THE CINCINNATI INSURANCE COMPANY
6200 South Gilmore Road
Fairfield, Ohio 45014,

       *Defendant.*

Civil Action No.


COMPLAINT FOR BREACH OF
CONTRACT, DECLARATORY
JUDGMENT, AND OTHER RELIEF

The Jewish Federation of Greater Washington, Inc. (the "Federation") files this complaint

for breach of contract, declaratory judgment and other relief against The Cincinnati Insurance

Company ("CIC" or the "Insurance Company") alleging upon knowledge as to its own acts and

upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      This dispute concerns CIC's refusal to defend and indemnify the Federation against

and from a claim asserted by ORT America Inc. and the Women's American ORT Foundation Inc.

(together, "ORT") arising out of an alleged wrongful act that took place and was noticed to CIC

and subject to a claim made to CIC during the period of the CIC policy issued to the Federation

(the "Policy").

2.      The Federation is a nonprofit charitable organization providing vital services for

tens of thousands of residents of the District of Columbia through an office and operations in

Washington, D.C., as well as millions of dollars of annual support of many partner organizations

based in Washington, D.C.

3.      Defendant CIC issued the Federation a Nonprofit Organization Directors and Officers Liability policy for the period of August 15, 2017 to August 15, 2020 (the "Policy").

4.      In August 2020, the Federation first became aware that it was the victim of a scheme that resulted in the Federation wrongfully transferring funds to a foreign bank account (the "Wrongful Act").   Within days of discovering the Wrongful Act, and before the expiration of the Policy, the Federation caused timely written notice to be provided to CIC of the Wrongful Act on August 12, 2020.  Under the terms of the Policy, "any subsequent Claim made arising out of such Wrongful Act shall be deemed to have been made when notice of the Wrongful Act was first given."

5.      ORT alleged the Federation was liable for losses related to the Wrongful Act and demanded monetary relief from the Federation (the "ORT Claim"). The ORT Claim is a covered claim under the Policy, and the Federation is entitled to the full benefit of insurance coverage contained in the Policy in connection with the ORT Claim.  However, CIC has improperly and denied coverage under the Policy and refused and failed to pay in full the costs of investigation, defense, and legal liability arising from the Wrongful Act and in connection with the ORT Claim, in breach of its obligations under the Federation Policy.

6.      The Federation asserts a breach of contract claim against CIC under the Policy for its failure to: (i) defend the Federation against the ORT Claim relating to the Wrongful Act or otherwise pay or reimburse the Federation for the costs of such defense; and (ii) pay or reimburse the Federation for all sums paid or incurred as damages on behalf of the Federation that have resulted from the ORT Claim.

7.      The Federation also seeks declaratory judgment as to any and all additional

damages that may result from the Wrongful Act.  Finally, the Federation seeks to reinforce this Court's ability to resolve efficiently and quickly all issues related to this dispute by seeking "all writs" in aid of this Court's jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651.

## THE PARTIES

8.     Plaintiff The Jewish Federation of Greater Washington, Inc. is a foreign not-for-profit corporation authorized to do business in the District of Columbia and maintains offices at 800 8th Street, NW, Washington, D.C. 20001.  The Federation provides over $2 million per year to about a dozen organizations in Washington, D.C. The Federation strives to build and sustain a purposeful and vibrant Jewish community in the Greater Washington, D.C. area. The United Jewish Endowment Fund ("UJEF") is a division of the Federation.[1] The Federation collaborates with other non-profits, such as ORT America Inc. and the Women's American ORT Foundation Inc., providing them the opportunity to invest their own funds through the Federation and UJEF.

9.     Defendant Cincinnati Insurance Company is a corporation organized under the laws of Ohio with its principal place of business in Fairfield, Ohio.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between plaintiff and defendant, and the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interests and costs.

11.     This Court has jurisdiction to declare the rights of the parties pursuant to 28 U.S.C. § 2201.

12.     Venue is proper in this Court as the wrongful actions by CIC harm the Federation's extensive charitable operations in the District of Columbia.

---

[1] UJEF has recently been renamed the Jewish Community Foundation.

## FACTUAL ALLEGATIONS

**I.**   **The Hacking Scheme and the Wrongful Act**

13.     Beginning in June 2020, the Federation was the victim of a data hack and scheme that tricked the Federation into wiring funds into fraudulent bank accounts. On four occasions that summer, the Federation, among other things, wrongfully acted and erred by relying on fabricated and fraudulent requests to initiate wires to Hong Kong accounts totaling $7,510,700. The requests to wire the funds appeared to come from two non-profits, ORT America Inc. and the Women's American ORT Foundation Inc. (together, "ORT"), which had entrusted certain funds to the Federation. The requests arrived in emails appearing to be from the relevant ORT controller.

14.     Hackers had gained access to and control over the Microsoft 365 Federation account, including the email account, of a former senior member of the Federation's financial team. After hackers stole the former senior member's password, the former senior member made a series of errors that allowed the hackers to gain sustained access to the former senior member's Federation accounts. Specifically, the former senior member failed to follow proper protocols and repeatedly approved multi-factor authorization access requests prompted by the hackers' attempts to access the account.

15.     Once inside the Federation account of the former senior member of the financial team, the hackers could send emails on the former senior member's behalf and could control which emails the former senior member could see. They were also able to establish similar control over the account of a second member of the Federation's financial team, because of administrative permissions granted to the account of the former senior member of the financial team.

16.     The scheme then proceeded on two fronts. First, the hackers sent emails to the second financial team member that appeared to be from ORT officers asking the Federation to

send ORT's funds to Hong Kong bank accounts. Then, the hackers created spoof accounts allowing them to impersonate ORT officials—any follow-up communications concerning the fraudulent requests that the former senior member or the second financial team member then sent went to the hackers, not to ORT.

17.     Upon receipt of each fraudulent request, the Federation initiated its approval process. During deliberations, the Federation's professional staff and lay leaders exchanged emails expressing concern about the large size and overseas destination of the requests. The hackers monitored this conversation and then impersonated the former senior member of the financial team (and on one occasion the second financial team member) to send emails to Federation employees involved in approving the transaction. The emails claimed that the former senior member of the financial team or the second financial team member had communicated with ORT leaders and verified that the transactions were legitimate.

18.     The former senior member of the financial team and the second financial team member—who, in reality, had not communicated with ORT—were unaware of the emails that appeared to have been sent by them. In reliance on the falsified emails, Federation officers and lay leaders approved a total of over $7.5 million in fraudulent transfers.

19.     Following an alert from the Federation's cybersecurity system, the Federation's IT provider made the determination that the Federation's Microsoft 365 system, including its email accounts, had been hacked.

20.     The Federation concluded that the Hong Kong wire requests were fraudulent—sent by hackers, not by ORT. The hackers ultimately defrauded the Federation of $7,510,700 of ORT's money.

21.     The Federation was subsequently able to recoup part of stolen funds from certain

overseas banks in the amount of approximately $3.2 million.

**II.   The CIC Policy**

22.    CIC issued to the Federation a Pillar Directors and Officers Liability Policy No. EMN 044 97 53, for the policy period August 15, 2017 through August 15, 2020. The liability coverages under the Federation Policy provide coverage for claims first made during the policy period, or any applicable extended reporting period ("ERP"), against an insured for a wrongful act.

23.    The Policy provides that any claim subsequently made that arises out a wrongful act noticed during the policy period shall be deemed to have been made when notice of the wrongful act was first given.

24.    The Policy also provides for an automatic 90-day and an optional 12-month extended reporting periods for claims made that relate to a wrongful act committed, attempted, or allegedly attempted or committed prior to the end of the extended reported period.

25.    The Federation timely purchased the optional extended reporting period.

26.    Coverage under the Policy is subject to a $5 million limit of liability.

27.    The Policy provides under Section I.C. that CIC "will pay on behalf of the **organization** all **loss** which the **organization** is required to pay resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, against the **organization** for a **wrongful act**."

28.    Under the Policy, "claim" means, among other things, "a written demand for monetary or nonmonetary relief."

29.    Under the Policy, "wrongful act" means "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty including any personal injury or publishers liability committed, attempted or allegedly committed or attempted on or after the

Retroactive Date, if any, set forth in the Nonprofit Organization Directors and Officers Liability Coverage Part Declarations and prior to the end of the policy period by: (1) Any of the insured persons in the discharge of their duties solely in their capacity as insured persons of the organization; (2) Any of the insured persons of the organization in the discharge of their duties solely in their capacity in an outside position in any outside organization; (3) Any of the insured persons solely by reason of their status as such; or (4) The organization."

30.     The Policy contains a duty to defend, imposing on CIC the right and duty to select counsel and defend the insured against any claim.

**III.    Notice of the Wrongful Act, ORT's Claim Against the Federation, The Federation's Claim to CIC Under the Policy, and CIC's Denial of Coverage and Claims Handling Under the Policy**

31.     On August 12, 2020, the Federation caused written notice of a Wrongful Act to be provided to CIC and attached correspondence providing specific details of the wrongful wire transfers totaling $7,510,700 of funds belonging to ORT.

32.     On August 13, 2020, CIC dismissed out of hand the Federation's notice of Wrongful Act despite it fully complying with the Policy's notice provision and before even receiving a subsequent claim based on the Wrongful Act detailed in the August 12, 2020 notice.

33.     CIC further continued its baseless denial of coverage by repeatedly using the Federation's cooperation in supplying more background information surrounding the properly notified Wrongful Act against the Federation because such cooperation took place after August 15, 2020.

34.     For example, CIC, through the actions of its Assistant Secretary David Dietz, twice attempted to deny any responsibility for the Federation's proper August 12, 2020 notice of the Wrongful Act before the Federation ever received the ORT Claim.  In letters dated August 13,

2020 and September 1, 2020, Mr. Dietz attempted to abandon CIC's insured at a time when the Federation was in the middle of addressing issues arising from the Wrongful Act by wrongfully claiming that the Federation's August 12, 2020 notice was insufficient, and that its provision of additional background information was untimely, even though the ORT Claim had yet to be received by the Federation.  Furthermore, CIC claimed that certain information had not been provided despite such information having already been provided.

35.     On September 22, 2020, the Federation received a demand from ORT (as defined above, the "ORT Claim") for payment of the $7,510,700 that had been lost as a result of the alleged Wrongful Act involving, among other things, errors and actions involving specific wrongful wire transfers, that were previously notified to CIC on August 12, 2020.

36.     On September 29, 2020, the Federation received a demand from ORT—virtually identical to the ORT claim of September 22—and provided it to CIC on the next day, September 30, 2020.

37.     Almost four months later, CIC sent the Federation a letter on January 18, 2021, purporting to deny coverage for the ORT Claim and refused to defend Federation from the ORT Claim as required under the Policy despite the ORT Claim being based precisely on the Wrongful Act noticed on August 12, 2020.

38.     On March 9, 2021, the Federation, which had been defending the ORT Claim without any assistance from CIC, notified CIC of a possibility to settle the ORT Claim and requested CIC's consent to settle.

39.     In a letter dated March 12, 2021, CIC stated that it was "not in a position to consent to settlement" based on its January 18, 2021 denial of coverage.

40.     In April 2021, counsel defending Federation from the ORT Claim reached out to

CIC requesting a call to discuss a proposed settlement of the ORT Claim.  In a letter dated April 22, 2021, CIC informed the Federation that it is "not in a position to consent to settlement or participate in settlement discussions, since it is [CIC's] position that coverage is not available under the Policy for the [ORT Claim]."

41.    On May 28, 2021, the Federation and ORT reached a settlement of the ORT Claim.

42.    The amount paid to date by the Federation in fulfillment of the settlement of the ORT Claim exceeds the $5 million Limit of Liability provided by the Policy.

43.    Effective May 26, 2021, the Federation and CIC entered into a tolling agreement tolling all timing-related defenses related to the ORT Claim ("Tolling Agreement").

44.    The parties extended the Tolling Agreement three times with the current expiration date of December 31, 2022.

45.    On December 22, 2022, the Federation and CIC participated in mediation to resolve CIC's coverage obligations in connection with the Wrongful Act and ORT Claim.  CIC's representatives claimed that they appeared at the mediation because their policy required mediation despite their policy containing an endorsement permitting mediation but not requiring it.  The mediation was unsuccessful.

46.    Any conditions precedent to coverage under the Policy, if any, have been met, satisfied, or waived in fact or by operation of law.

47.    There is an actual and present controversy between the Federation and CIC as to the nature and extent of CIC's obligations to the Federation under the Policy with respect to the ORT Claim.

## COUNT I
### (Breach of Contract)

48.    The Federation repeats and incorporates by reference the allegations set forth in

paragraphs 1 through 47, as though fully set forth herein, and further alleges as follows.

49.     The Policy is a valid and enforceable contract.

50.     The Federation properly notified CIC of an alleged Wrongful Act during the period of the Policy.

51.     The ORT Claim is deemed to have been first made during the period of the Policy as it relates to an alleged Wrongful Act that took place and was notified during the period of the Policy.

52.     Alternatively, the ORT Claim falls within the ERP of the Policy as it was received by the Federation and sent to CIC within 90 days of the end of the period of the Policy and relates to an alleged Wrongful Act that took prior to the end of the policy period of the Policy.

53.     The Policy covers the ORT Claim.

54.     Under the Policy, CIC has a duty to defend and indemnify the Federation in connection with the ORT Claim.

55.     No exclusions in the Policy apply to bar or limit coverage.

56.     Nonetheless, CIC unjustifiably refuses to provide defense or indemnity coverage to the Federation in breach of the Policy.

57.     As a direct and proximate result of CIC's continuing breach of contract, the Federation is entitled to damages as a result of and consequence of CIC's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief this Court deems appropriate.

## COUNT II
### (Declaratory Judgment)

58.     The Federation repeats and incorporates by reference the allegations set forth in paragraphs 1 through 47, as though fully set forth herein, and further alleges as follows.

59.     At all relevant times, the Policy was a binding and enforceable contract. The Federation paid substantial premiums to CIC in consideration for Pillar Directors and Officers Liability Policy No. EMN 044 97 53.

60.     The Federation is entitled to coverage under the Policy for the Wrongful Acts and resulting Claim.

61.     The Policy requires CIC to pay for claims arising out of Wrongful Acts.

62.     CIC has failed or refused to acknowledge, accept, or undertake its obligations to pay or reimburse in full its legal liabilities.

63.     An actual and justiciable controversy presently exists between the Federation and CIC concerning their respective rights and obligations under the Policies, and the coverage owed to the Federation with respect to its insurance claim.

64.     The controversy is of sufficient immediacy to justify issuance of a declaratory judgment.

65.     The Federation seeks a judicial determination to resolve the present controversy over the coverages owed under the Policy.

66.     The Federation is entitled to a judicial declaration that CIC is obligated to pay the Federation's loss or damage under the Policy.

## COUNT III
### (All Writs Act)

67.     The Federation repeats and incorporates by reference the allegations set forth in paragraphs 1 through 47, as though fully set forth herein, and further alleges as follows.

68.     The All Writs Act, 28 U.S.C. § 1651, authorizes this Court to issue "all writs necessary or appropriate in aid of [its] jurisdiction."

69.     This Court has jurisdiction to decide all issues related to this dispute.

70.     CIC has breached its contractual obligations in the District of Columbia and the Court should invoke its power to enforce all appropriate remedies against CIC as a result of its wrongful actions directly impacting residents of the District of Columbia.

71.     The Federation therefore seeks the issuance of all orders, whether permanent, temporary or injunctive, necessary or appropriate in aid of this Court's jurisdiction, by and through such motions or other relief that the Federation may from time to time seek.

## PRAYER FOR RELIEF

**WHEREFORE**, the Federation respectfully requests the following relief:

A.     For an order that CIC is in breach of the Policy and obligated, pursuant to the terms of the Policy, to (i) defend its insured or otherwise pay or reimburse all of the Federation's reasonable defense costs and expenses arising from, or incurred in connection with, the ORT Claim,  (ii) indemnify the Federation, and to pay all loss, arising from, or incurred in connection with, the ORT Claim;

B.     For an order declaring CIC obligated to pay all loss in connection with all future claims related to the Wrongful Act;

C.     For an order awarding the Federation its attorneys' fees and costs of suit incurred in bringing and pursuing this action;

D.     For an order awarding the Federation pre-judgment and post-judgment interest;

E.     Such other and further relief that the Court may deem just and proper, including but not limited to all writs necessary or appropriate in aid of this Court's jurisdiction.


Respectfully submitted,

Dated:        December 29, 2022

By: _____
Paul A. Zevnik (D.C. Bar No. 952465)
Daniel E. Chefitz (D.C. Bar No. 481420)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202.739.3000
Fax: 202.739.3001

*Attorneys for The Jewish Federation of Greater
Washington, Inc.*

## JURY DEMAND

The Federation demands a trial by jury on all triable issues. The Federation certifies that the amount, legal interest, or property in demand in this action is seventy-five thousand dollars or more, exclusive of interest and costs.

Dated:     December 29, 2022          By: _____

Paul A. Zevnik (D.C. Bar No. 952465)
Daniel E. Chefitz (D.C. Bar No. 481420)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202.739.3000
Fax: 202.739.3001

*Attorneys for The Jewish Federation of Greater Washington, Inc.*